# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO JUAN INEZ MARTINEZ,<br><br>            Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>            Defendant.<br>_____/ | CASE NO. 1:11-cv-01353-SMS<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

Plaintiff Alejandro Juan Inez Martinez, by his attorneys, Christenson Law Firm, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act (42 U.S.C. § 301 *et seq.*) (the "Act"). The matter is currently before the Court on the parties' cross-briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge. Following review of the record as a whole and applicable law, this Court affirms the agency's determination to deny benefits to Plaintiff.

## I.     Administrative Record

### A.     Procedural History

Plaintiff received supplemental security income benefits based on disability as a child. When Plaintiff reached the age of eighteen years, as required by law, the Commissioner re-evaluated Plaintiff's impairments based on rules for determining disability in adults. On May 31, 2005, the Commissioner determined that Plaintiff was no longer disabled as of May 1, 2005. The

state agency upheld this determination when Plaintiff did not appear for the rehearing scheduled for reconsideration. Although Plaintiff failed to appear for the next scheduled hearing on March 27, 2007, ALJ Michael J. Haubner took testimony from a vocational expert. After Plaintiff also failed to appear for hearings on June 19 and August 10, 2007, Judge Haubner declared him a non-essential witness and issued a hearing decision finding Plaintiff not to be disabled.

On August 7, 2008, Plaintiff again filed for supplemental security income, alleging disability beginning December 1, 2005.[1] His claim was initially denied on November 17, 2008, and upon reconsideration on April 20, 2009. Plaintiff appeared and testified at a hearing on February 24, 2010. On April 1, 2010, Administrative Law Judge James P. Berry denied Plaintiff's application. Plaintiff appealed to the Administrative Council, which denied review on June 28, 2011. Plaintiff filed a complaint with this Court on August 11, 2011.

**B.     Agency Record**

**Plaintiff's testimony.** Plaintiff (born August 27, 1986) completed the twelfth grade and graduated from Grant Hills High School. Plaintiff testified that he did well in school, usually receiving Cs and Bs. In 2007, he worked for approximately three months for General Construction Company at a pistachio packing plant, performing repairs and maintenance during the pistachio harvest. Plaintiff did not drive.

Plaintiff testified that he was assaulted and robbed in front of the movie theater, stabbed six times in his abdomen, back, and armpit. As a result, he experienced difficulty keeping down food and needed to use the rest room frequently. He slept poorly, his sleep broken by trips to use the bathroom. Plaintiff testified that his trips to the bathroom often lasted ten to twenty minutes. He also experienced sharp shocking pains in his back and stomach, a feeling that his stomach inflated, and " a lot of hard pressure." AR 35. Nonetheless, he was no longer depressed and felt "pretty decent." AR 35.

Plaintiff testified that he took thirty units of insulin twice daily. His blood sugar was usually just a little higher than average. Diabetes made his vision blurry.

---

[1] Plaintiff's mother, Gloria Martinez filed the application on Plaintiff's behalf, alleging mental retardation.

2

In response to his attorney's leading questions, Plaintiff confirmed that he was paranoid because his assailants had never been caught. He did not know what post traumatic stress disorder was.

Plaintiff lived with his girlfriend Angelica Prado and their two children, aged one and a half, and two and a half. While Ms. Prado worked, Plaintiff cared for the children, including dressing and feeding them. The family supported itself on Ms. Prado's income.

Plaintiff reported that he had difficulty paying attention. He estimated that he was able to concentrate for thirty minutes to an hour. As a result of back pain, he could walk about a block and stand about thirty minutes to an hour. The heaviest thing he could lift was his daughter, who weighed about thirty pounds. Two or three times monthly, Plaintiff had bad days on which he awoke with his back or body swollen. On those days, he remained in bed.

**Disability Report.** In his disability report, Plaintiff stated that, while he was employed at the pistachio plant, he frequently missed work due to back pain and headaches. He stopped working November 25, 2005, when his seasonal job ended.

**Adult Function Reports.** In an adult function report dated September 18, 2008, Plaintiff reported that he spent his days brushing his teeth, eating, playing with his children, showering, walking around, watching television, cleaning, using the restroom, and sleeping. He had memory problems and sometimes forget whether he had taken his medication. It was difficult to bend down to tie his shoes. He cooked about once a week; he was a poor cook because he forgot that the food was on the stove. He washed dishes, vacuumed, and took out the trash. He shopped for food. He was able to go out alone. He handled his own finances but had difficulty counting money. He spoke with others and watched television with them. He visited family members on a regular basis. He had no trouble with authority figures. He found changes in routine stressful and confusing.

Plaintiff's mother, Gloria Martinez, saw Plaintiff daily when he came to her home to watch television. She emphasized his stomach pain and swelling. Plaintiff performed personal care when pain did not interfere, but needed to be told when to bathe. He needed to be reminded

///

to do chores and praised afterwards.  He could pay his bills but had never had a bank account.  He was unable to count money.  Since being stabbed, he did not like to go out.

According to Ms. Martinez, Plaintiff's condition affected seventeen of the nineteen listed activities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding, and following instructions.  His attention span was short.  He had respect for authority figures.  Stress made Plaintiff nervous and sad.

Ms. Prado's report was substantially the same as the report prepared by Ms. Martinez.

**Medical records.**  Physicians and other medical professionals at Family Health Care Network provided Plaintiff's primary care, principally monitoring his diabetes.  Plaintiff frequently failed to appear for his appointments.  As of July 5, 2006, Plaintiff's diabetes was being treated with Metformin and insulin.

On April 3, 2007, Plaintiff was stabbed in three places: (1) the lateral right upper quadrant of his abdomen; (2) 4 cm. below and 4 cm. lateral to his left nipple; and (3) a predominantly left-sided slicing and penetrating wound to the back at approximately the level of his lumbar spine.  At Sierra View District Hospital, physicians performed surgery to identify the extent of the wounds and to repair them.  Plaintiff's liver, colon, diaphragm, and intercostal artery were perforated, and he suffered hemothorax.  His pericardium was lacerated but the heart itself was not penetrated.  Plaintiff recovered and was discharged after five days in the hospital.

During Plaintiff's hospitalization, Christopher Kolker, M.D., of Family Health Care treated Plaintiff's diabetes.  On admission, Plaintiff's blood sugar was 424.  On April 5, 2007, Plaintiff's blood sugar measured in the 160's.  Once Plaintiff began receiving a full liquid diet, his blood sugars ranged from 205 to 317.  Dr. Kolker began insulin treatment on April 9, 2007.

X-rays taken of Plaintiff's lumbar spine on May 21, 2007, were unremarkable.

On August 9, 2007, Plaintiff complained of suffering back pain.  Physician's assistant Andrew Fairburn explained to Plaintiff that the pain was likely neuropathic pain following his stab wound and could continue for months or years.  Plaintiff's diabetes was uncontrolled, with blood sugar at 333 and large amounts of glucose in his urine.

4

Lab results dated October 30, 2007, noted blood sugar at 407; hemoglobin blood alcohol at 13.6 % (nondiabetic blood alcohol would be less than 6 %); microalbumin in the urine at 178 mg/L; and an albumin/creatine ratio of 185.42 mg/g. (Microalbumin normally should measure less than 22 mg/L; a normal albumin/creatinine ratio is below 29.0 mg/g.) Plaintiff also had elevated cholestrol.

On November 19, 2007, Christopher Kolker, M.D., prescribed Ultram and Lantus for Plaintiff's diabetes. Although Plaintiff's straight-leg raising exam was equivocal,[2] a peripheral and neurological exam of his back was normal. Dr. Kolker referred Plaintiff for x-rays and physical therapy.

X-rays of Plaintiff's abdomen and pelvis taken at Sierra View District Hospital on December 11, 2007, revealed no reason for Plaintiff's complaint of right-sided abdominal pain. Plaintiff's blood glucose was 324.

On April 4, 2008, Plaintiff's lab tests again indicated elevated cholestrol, microalbumin, and albumin/creatine ratio. Blood sugar was 442; hemoglobin alcohol was 14.6. Physician's assistant Liberty Lomeli noted Plaintiff was noncompliant with his diabetes medication regimen and treatment.

On April 15, 2008, noting that Plaintiff's blood sugar was 367, Lomeli characterized Plaintiff's diabetes as "not improved, not controlled." AR 197. Plaintiff told Lomeli that he was only following the prescribed diet.

On April 19, 2008, Plaintiff was treated in the emergency room of Sierra View District Hospital while in police custody. He had abrasions to his forehead, temple, and under his left eye and was treated for hyperglycemia (initial blood sugar of 322).

On November 2, 2009, physician assistant David Larios noted that Plaintiff's diabetes was uncontrolled due to noncompliance.

///

---

[2] The straight leg raising test is administered during a physical examination to determine whether a patient with low back pain has an underlying herniated disc. The test is positive if the patient experiences pain down the back of the leg when the leg is raised. *Miller v. Astrue*, 2010 WL 4942814 (E.D. Cal. November 30, 2010) (No. 1:09-cv-1257-SKO).

**Dr. Buttan.** On October 30, 2008, internist Vijay K. Buttan, M.D., prepared a report as an agency consultant. Dr. Buttan reported that Plaintiff's chief complaint was back pain, for which he took Vicodin three to four times daily. Plaintiff also complained of loose stools eight to ten times daily. Plaintiff told Buttan that his blood sugar was well controlled.

On examination, Plaintiff's gait was normal, and he required no assistive device. Although Plaintiff's lumbosacral spine was tender, Plaintiff demonstrated a full range of motion. When asked to bend over and touch his toes, Plaintiff could not do so and complained of pain in his lower back. Straight leg raising was 60 degrees in both legs, with Plaintiff again complaining of pain.

Dr. Buttan commented:

> The patient's main problem appears to be back pain and diarrhea. In my opinion, he should have an MRI done of his lower back to find out the exact etiology of his back pain. Diarrhea could be secondary to multiple injuries to his intestines, surgery, or due to metformin. So discontinuation of metformin can be tried. His other main problem is mental, which is he is having trouble in the memory. In my opinion, he should have a psychiatric evaluation done. In my opinion, he should be able to sit for five to six hours in a day and stand for four to five hours and walk about three to four hours. He may have to use the rest room frequently. He should be able to work with his hands like manipulate small tools, instruments, or work on the computer or typewriter keyboard.

AR 259.

**Dr. Hirokawa.** On March 27, 2009, psychologist Greg Hirokawa, Ph.D,, conducted a consultative psychiatric evaluation on behalf of the agency. Plaintiff reported that he completed the twelfth grade and had not attended special education classes. He had never worked for pay. He had a prior misdemeanor arrest.

Mental activity and speech were within normal limits. Plaintiff demonstrated intellectual capacity within the normal range. He could name three presidents and perform simple arithmetic, but did not know the capitol of California. Plaintiff could spell simple words forward and backward.

Hirokawa opined that Plaintiff was able to handle his own funds. He had mild limitations in remembering locations and work-like procedures, understanding and remembering short and simple instructions, and understanding and remembering detailed instructions. Plaintiff had mild

6

limitations in maintaining attention and concentration for extended periods, accepting criticism from a supervisor, working within a schedule, being punctual, maintaining regular attendance, and interacting with coworkers. His ability to function independently in a sustained ordinary routine without special supervision was also mildly limited. Plaintiff had mild-to-moderate limitations in completing a normal work day and work week without interruption from psychologically based symptoms, and in withstanding the stress of a routine work day. The likelihood that Plaintiff would deteriorate emotionally in a work environment was minimal to moderate.

**Case analysis.** In a case analysis prepared November 5, 2008, agency physician R. Fast, M.D., noted that, based on his daily activities, Plaintiff could perform simple repetetive tasks. Concluding the Plaintiff had no severe physical limitations, Fast rejected Dr. Buttan's report, finding it to have been based largely on Plaintiff's subjective complaints. Although Plaintiff's IQ was borderline, his claim of mental impairments was not fully credible and did not reach the level of a listed impairment.

Agency physician Glenn Ikawa, M.D. agreed, noting that Plaintiff's diabetes had not caused organ damage, his back x-rays were normal, and no objective evidence supported Plaintiff's claim of headaches. Plaintiff's mental impairment was borderline intelligence. In assessing Plaintiff's mental residual functional capacity. Ikawa determined that Plaintiff had no significant limitations except that he was moderately limited in his ability to understand, remember, and carry out detailed instructions. Plaintiff had mild limitation in activities of daily living and maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. He had no episodes of decompensation.

In a case analysis dated March 26, 2009, agency consultant George G. Spellman, Jr., M.D., opined that Plaintiff had no severe persisting physical impairment. Plaintiff's physical examinations were completely normal. Dr. Spellman questioned Plaintiff's credibility, noting that although Plaintiff claimed to be treating his pain with Vicodin, no Vicodin prescription appeared in his medical records, and that although Plaintiff claimed to be unable to get along with others, he visited with friends and family and was capable of caring for young children. Dr. Middleton agreed, recommending that the agency affirm its original denial of Plaintiff's application for SSI.

**Vocational expert.** Thomas Dachelet testified as vocational expert. He identified Plaintiff's prior work as a general laborer, medium and unskilled.

For the first hypothetical question, the ALJ directed Dachelet to assume a 23-year-old individual with a twelfth grade education and past relevant work as a general laborer. The individual had a combination of severe impairments but retained the ability to lift and carry 100 pounds occasionally and fifty pounds frequently; to stand, walk, and sit six to eight hours each; to perform repetetive tasks; to maintain attention, concentration, and persistence; to relate to and interact with others; to adapt to usual changes in work settings; and to adhere to safety rules. Dachelet opined that such a person could perform Plaintiff prior work as a general laborer. The hypothetical person could also perform the full range of sedentary through heavy unskilled work. Representative heavy, unskilled jobs would include upholstery worker (DOT 525.687-082), 12,419 positions in California; freezer room worker (DOT 523.687-022), 94,322 positions in California; and equipment cleaner (DOT 599.684-010), 6,081 positions in California. In each case, approximately nine times as many positions are available in the United States as a whole.

For the second hypothetical question, the ALJ directed Dachelet to assume a 23-year-old individual with a twelfth grade education and past relevant work as a general laborer. The individual had a combination of severe impairments but retained the ability to lift and carry thirty pounds occasionally; to stand thirty to sixty minutes total; to walk approximately one block; and to sit approximately on hour total. The individual would need to use the toilet every thirty to sixty minutes for ten to twenty minutes at a time. The individual would have difficulty maintaining concentration for more than thirty minutes. He or she would be absent from work two or three days per month. Dachelet opined that the world of work would be closed to such a person.

Plaintiff's attorney then directed Dachelet to assume a person of the same age, education, and work experience as Plaintiff. The hypothetical person would have mild to moderate limitations in his ability to complete a normal work day and work week without interruption from psychologically based symptoms, and to perform at a consistent pace. His ability to withstand a routine work day would be mild to moderate. The likelihood of the hypothetical person deteriorating in a work environment would be minimal to moderate. The hypothetical person

could lift and carry thirty pounds occasionally. Dachelet responded that the combination of limitations would effectively close the world of work to the hypothetical person.

Finally, Plaintiff's attorney directed Dachelet to assume the individual would need to take bathroom breaks at intervals including five, ten, fifteen, thirty, or sixty minutes. Dachelet again opined that no work would be available for the hypothetical person.

## II.  Legal Standards

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other substantial gainful work existing in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process for evaluating an alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f); 416.920 (a)-(f). The process requires consideration of the following questions:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n. 5 (9th Cir. 1995).

///

In addition, when an applicant has one or more previous denials of applications for disability benefits, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling ("SSR") 96-4(9), adopting *Chavez*, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the undjuducated period. *Lester*, 81 F.3d at 827. The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. *Id.* at 827-28; *Chavez*, 844 F.2d at 693.

In this case, Plaintiff's prior application for supplemental security income was denied on August 29, 2007. In the hearing decision, Administrative Law Judge Michael J. Haubner found that Plaintiff retained the residual functional capacity to perform the full range of work at all exertional levels; he could understand and carry out simple commands, interact appropriately with others, and respond appropriately to work place situations. Accordingly, the ALJ concluded that Plaintiff was not disabled.

In applying *Chavez* and Ruling 96-4(9), Judge Berry found that Plaintiff overcame the presumption of nondisability due to the additional severe impairment of post traumatic stress disorder diagnosed after Plaintiff was assaulted and stabbed multiple times on April 4, 2007. Accordingly, Judge Berry treated the prior decision as *res judicata* only through the date of decision (August 29, 2007).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of August 7, 2008. His severe impairments were post traumatic stress disorder (PTSD); borderline intellectual functioning, rule out learning disorder; and diabetes mellitus. None of these impairments met the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

1  Plaintiff retained the residual functional capacity to lift and carry one hundred pounds
2 occasionally and fifty pounds frequently, and to stand or walk six hours and to sit six hours in an
3 8-hour work day.  He could perform simple repetitive tasks; maintain concentration, attention,
4 persistence, and pace; relate to and interact appropriately with others; adapt to usual changes in
5 the work place; and adhere to safety rules.  Plaintiff was capable of performing his past work as a
6 general laborer, medium, unskilled.

**III.     Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, a court must determine whether substantial evidence supports the Commissioner's decision.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's decision.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards, and if the ALJ's findings are supported by substantial evidence.  *See Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 510 (9th Cir. 1987).  "Where the evidence as a whole can support either outcome, we may not substitute our judgment for the ALJ's."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

Focusing on the substantial evidence standard in this case and considering the record as a whole leads to an inevitable conclusion that the ALJ's decision was supported by substantial evidence.  Plaintiff's arguments to the contrary cannot overcome the paucity of evidence produced to support a conclusion that, despite having been found not to be disabled in 2007, the physical and mental aftereffects of Plaintiff's stabbing resulted in his becoming disabled thereafter.  In

addition, after carefully reviewing the administrative record, the Court must concur with the ALJ's finding that Plaintiff's subjective complaints were not credible. Plaintiff's arguments depend largely on his own subjective complaints, but those were both inconsistent with the objective medical records submitted in the administrative proceedings and varied from one occasion to another. Ultimately, Plaintiff arguments of appeal cannot overcome the paucity of evidence supporting his subjective claims.

### IV.     Step Two: Inclusion of Diarrhea as a Severe Impairment

Plaintiff contends that the ALJ erred in failing to adopt Dr. Buttan's opinion that Plaintiff's diarrhea was a severe impairment. The Commissioner responds that the ALJ properly gave Dr. Buttan's opinion little weight since it was not supported by objective evidence. The Court agrees that Dr. Buttan's equivocal consideration of Plaintiff's complaints of diarrhea did not compel the ALJ to include diarrhea as a severe impairment.

In his written consultation, Dr. Buttan noted that Plaintiff "complains of having loose stools 8 to 10 times a day since he had surgeries done [following the assault in which he was stabbed]." AR 258. In his impressions, Dr. Buttan speculated, "Chronic diarrhea could be secondary to surgeries or due to metformin." AR 259. Accordingly, the doctor noted in his comments: "He may have to use the rest room frequently." AR 259.

At the initial and reconsideration levels of administrative review of a SSI application, agency consultants are responsible for determining medical severity. 20 C.F.R. § 416.920(a)(4)(ii). In a case analysis prepared November 5, 2008, agency physician R. Fast, M.D., noted that, based on his daily activities, Plaintiff could perform simple repetitive tasks. Concluding the Plaintiff had no severe physical limitations, Dr. Fast rejected Dr. Buttan's report, finding it to have been based largely on Plaintiff's subjective complaints. Agency physician Glenn Ikawa, M.D., agreed.

In a case analysis dated March 26, 2009, agency consultant George G. Spellman, Jr., M.D., opined that Plaintiff had no severe persisting physical impairment. Dr. Middleton agreed, recommending that the agency affirm its original denial of Plaintiff's application for SSI.

In the hearing decision, Judge Berry agreed with the agency physicians.

1  "The Step Two inquiry is a *de minimus* screening device to dispose of groundless or
2  frivolous claims." *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Webb v. Barnhart*, 433 F.3d
3  683, 686 (9th Cir. 2005).  At step two of the analysis, the claimant has the burden of producing
4  medical evidence of signs, symptoms, and laboratory findings supporting the conclusion that his
5  or her impairment is severe and can be expected to last more than twelve months.  *Ukolov v.*
6  *Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005).  "Although the regulations provide that the
7  existence of a physical or mental impairment must be established by medical evidence consisting
8  of signs, symptoms, and laboratory findings, the regulations provide that under no circumstances
9  may the existence of an impairment be established on the basis of symptoms alone."  SSR 96-4p.
10 Nor may the existence of a severe impairment be based on the claimant's own testimony of his or
11 her symptoms.  20 C.F.R. § 416.920(c).

12      In this case, the record includes no evidence regarding Plaintiff's experiencing chronic
13 diarrhea except his testimony, his complaint to Dr. Buttan, and Dr. Buttan's equivocal
14 acknowledgment of Plaintiff's subjective complaint.  Not a single medical record notes Plaintiff's
15 complaining of diarrhea or addresses treatment of diarrhea.  Accordingly, the ALJ did not err by
16 not including diarrhea as one of Plaintiff's severe impairments.  Further, in the absence of
17 evidence supporting a finding that diarrhea was a severe impairment, the ALJ did not err in
18 disregarding the vocational expert's opinion of the effect of diarrhea on Plaintiff's ability to
19 perform work available in the national economy.

20 **V.    Dr. Hirokawa's Opinions**

21      Plaintiff contends that the ALJ erred in addressing Dr. Hirokawa's overall opinion
22 generally, without specifically discussing the doctor's opinions that Plaintiff had mild-to-moderate
23 limitations in completing a normal work day and work week without interruption from
24 psychologically based symptoms, and in withstanding the stress of a routine work day, and that
25 the likelihood that Plaintiff would deteriorate emotionally in a work environment was minimal to
26 moderate.  The Commissioner counters that the ALJ appropriately addressed Dr. Hirokawa's
27 opinion as a whole in the context of the record as a whole.  The Court agrees that the ALJ
28 ///

properly evaluated Dr. Hirokawa's opinion as a whole in the context of the administrative record as a whole.

As detailed in the review of the administrative record above, psychologist Greg Hirokawa, Ph.D., conducted a consultative psychiatric evaluation on behalf of the agency. Plaintiff's principal complaints were memory problems, difficulty being around others, occasionally feeling sad, paranoia, and difficulty concentrating. Plaintiff told Hirokawa that he had never been hospitalized for psychiatric problems or received any mental health treatment of any kind. Symptoms of post traumatic stress disorder were mild. Hirokawa's objective examination indicated that Plaintiff's mental activity and speech were within normal limits, and his intellectual capacity within the normal range. Plaintiff's mood was good; his affect, restricted. Plaintiff demonstrated satisfactory concentration by performing simple three-step commands and by spelling words backwards and forwards. Hirokawa opined that Plaintiff had mild limitations in remembering locations and work-like procedures; understanding and remembering short and simple instructions; understanding and remembering detailed instructions; maintaining attention and concentration for extended periods; accepting criticism from a supervisor; working within a schedule; being punctual and maintaining regular attendance; interacting with coworkers; and functioning independently in a sustained ordinary routine without special supervision. Dr. Hirokawa added that Plaintiff had mild-to-moderate limitations in completing a normal work day and work week without interruption from psychologically based symptoms, and in withstanding the stress of a routine work day. He estimated the likelihood that Plaintiff would deteriorate emotionally in a work environment as minimal to moderate.

Physicians render two types of opinions in disability cases: (1) medical, clinical opinions regarding the nature of the claimant's impairments and (2) opinions on the claimant's ability to perform work. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ is "not bound by an expert medical opinion on the ultimate question of disability." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); S. S. R. 96-5p. The regulations provide that medical opinions be evaluated by considering (1) the examining relationship; (2) the treatment relationship, including (a) the length of the treatment relationship or frequency of examination, and the (b) nature and

extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors that support or contradict a medical opinion.  28 C.F.R. § 404.1527(d).

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician.  *Id.*  An ALJ may rejected an examining doctor's opinion in favor of that of a non-examining physician, if the non-examining physician's opinion is supported by and consistent with other evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Once a court has considered the source of a medical opinion, it considers whether the Commissioner properly rejected a medical opinion by assessing whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The ALJ may reject the uncontradicted opinion of a treating or examining medical physician only for clear and convincing reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 831.  Even though the treating physician's opinion is generally given greater weight, when it is contradicted by an examining physician's opinion that is supported by different clinical findings the ALJ may resolve the conflict.  *Andrews*, 53 F.3d at 1041.  The ALJ must set forth a detailed and thorough factual summary, address conflicting clinical evidence, interpret the evidence and make a finding. *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) .  The ALJ need not give weight to a conclusory opinion supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Magallanes*, 881 F.2d at 751.  The ALJ must tie the objective factors or the record as a whole to the opinions and findings that he or she rejects.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

In this case, Judge Berry considered Dr. Hirokawa's consultative opinion in the context of the record as a whole, particularly with regard to Plaintiff's daily activities, including his ability to

care for himself, perform light housework, and provide daily care for two toddlers. The ALJ noted that, in his adult function report Plaintiff himself stated that:

> He takes care of his children, giving them showers, feeding them, changing them, and playing with them. He got a pill case with all the days on it. He washes dishes, vacuums, and takes out the trash; these things take an hour or two a day. He goes out alone; he walks, rides in a car, or uses public transportation. He shops in stores for food every month, it takes about three hours. He is able to pay bills, count change, and use bank accounts. He has no problems getting along with others such as family, friends, neighbors, and others. He can walk for ten minutes before he has to stop and rest. He can follow written and spoken instructions alright. He gets alone well with authority figures such as police, bosses, landlords or teachers.

AR 17.

Judge Berry concluded:

> In terms of the claimant's alleged inability to perform any of the jobs available in significant numbers in the national economy, his activities of daily living show that he spends his days performing activities that some people perform as their jobs.
>
> * * * * *
>
> I give some weight to the opinion of Dr. Hirokawa, the consultative psychologist. He did find only mild limitations in areas that impinge on the world of work. However, some of the limitations stated by the doctor are in areas in which claimant's daily activities seem to be inconsistent with such limitations. I give substantial weight to the opinions expressed by the State agency medical consultants, as those opinions seem to be more consistent with the evidence as a whole.

AR 20.

Although Plaintiff correctly points out that the ALJ did not specifically address Dr. Hirokawa's statements that Plaintiff had mild-to-moderate limitations in completing a normal work day and work week without interruption from psychologically based symptoms, and in withstanding the stress of a routine work day, and that the likelihood that Plaintiff would deteriorate emotionally in a work environment was minimal to moderate, he provides no authority for the proposition that an ALJ must specifically address each component of a medical expert's opinion. Even if such detail were required, Judge Berry's failure to address these two components of Dr. Hirokawa's opinion is harmless since no evidence supported them. Medical records in the administrative record include no references to post traumatic stress syndrome. The administrative record includes no evidence that Plaintiff received any mental health treatment for the after-effects

16

of the assault or for any other purpose. Plaintiff himself testified that he felt good, with no remaining depression.

An ALJ is not required to accept the opinion of any physician, including a treating physician, if the opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When a treating physician's medical opinion is contradicted by the opinion of another physician, the ALJ is required to do no more than provide specific and legitimate reasons for discounting the treating physician's opinion. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009). The ALJ did so here.

## VI. Conclusion and Order

The ALJ's conclusions were supported by substantial credible evidence. Accordingly, this Court hereby AFFIRMS the agency's determination to deny Plaintiff disability benefits. The Clerk of Court is directed to enter judgment for Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   August 17, 2012**              /s/ Sandra M. Snyder
                                                        UNITED STATES MAGISTRATE JUDGE